DE BOER *v.* ADAMS.

1. MALICIOUS PROSECUTION — QUESTIONS OF LAW AND FACT—ADVICE OF PROSECUTING ATTORNEY—STATEMENT TO ATTORNEY — PROBABLE CAUSE.
   In an action for malicious prosecution the defense that probable cause was shown and that the facts were fully and fairly stated to the prosecuting attorney, who directed the commencement of the proceeding, is a question of fact, where it appears that the plaintiff was arrested for the malicious destruction of trees growing along the highway which the evidence tended to show were a nuisance and were cut by the plaintiff under the direction of the overseer of highways, and it further appeared that the defendant stated the facts within his knowledge to the prosecuting attorney who directed the issuance of a warrant, but that the defendant omitted to state to the prosecutor that the growth had been previously cut by the public authorities, or that he was informed that the authorities intended to cut them again.

2. HIGHWAYS AND STREETS—TREES—RIGHTS OF ABUTTING OWNER —STATUTES.
   Section 4163, 2 Comp. Laws, requiring notice to be given to the adjoining owner before trees in the highway are cut, in order to give him an opportunity to remove them, only applies to trees growing upon the margin of the highway.

3. SAME—EVIDENCE OF AUTHORITY TO CUT TREES IN HIGHWAY.
   A refusal of the plaintiff to state his authority for cutting the trees and undergrowth in the highway does not operate as an admission that he had no authority to act.

Error to Kent; Perkins, J. Submitted November 19, 1909. (Docket No. 81.) Decided February 3, 1910.

Case by Anthony De Boer against William F. Adams for malicious prosecution. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*J. T. Preston,* for appellant.
*Dunham & Dunham,* for appellee.

BLAIR, J. This is an action on the case to recover damages for the alleged malicious prosecution of the plaintiff under the provisions of 3 Comp. Laws, § 11585, for the wilful, malicious, and wanton destruction of certain trees in a certain highway in the township of Paris, in the county of Kent.

Plaintiff gave evidence tending to show that he had been employed by his father, who at the time was the overseer of highways, to cut down the trees in question, receiving the wood that he could get out of them for his pay. The evidence also tended to show that the highway commissioner had instructed the overseer of highways to cut out the trees. The defendant Adams' farm abutted upon the highway in question, and the south half of the highway had originally belonged to him, but was condemned by the public authorities and compensation awarded and paid to Adams for his land. The road was laid out on the section line, where originally defendant's line fence stood, and the trees had grown up along this line fence. Plaintiff's testimony also tended to show that at the time the road was opened, about 1888, the trees and brush were mostly cut off, but sprang up again from the stumps and roots, and were again cut off about 10 or 11 years before plaintiff cut them, as hereinafter stated. Plaintiff's testimony also tended to show that the so-called trees were, for the most part, third growth saplings and brush, that they extended, in the widest part, about 10 feet on each side of the middle line of the highway, and were a nuisance, particularly in the winter time, owing to the drifting of the snow and its banking up against them. It also appeared that under his alleged agreement plaintiff was to cut no wood on the outside, or margin, of the road, but only in the center, and he testified that he did not. It also appeared that Mr. Adams had lived adjoining this highway ever since it was opened.

Plaintiff's testimony with reference to the arrest, upon which this action is predicated, is as follows:

"Mr. Adams came up and said, 'Do you know whose shade trees you are cutting?' I said, 'I did not know as I was cutting shade trees.' He said: 'You are; you are cutting my shade trees, and I want you to go.' I said, 'I didn't know that I was cutting shade trees.' He said, 'What do you call them?' I said, 'I call that brush.' Then he wanted to know who I was, and I told him I thought 'that was for me to know and for him to find out.' Then he said he would go down and have me arrested for cutting shade trees—his shade trees—and being saucy to him. * * * That was all the talk with Mr. Adams at that time. Later Mr. Adams came back with a neighbor by the name of Smith, and he said that 'he had brought his neighbor to see what I was doing.' I said, 'Well, he looks as though he has got good eyes, and he ought to be able to see what I am doing.' That was all that was said, I guess."

One Charles Gouzewaard testified that, in the morning of the day of plaintiff's arrest, and before Mr. Adams saw the prosecuting attorney, he told Mr. Adams that John De Boer, plaintiff's father and the overseer of highways, had told his (Gouzewaard's) father to cut the grubs, and he did not want to cut them.

Defendant's version of the transaction leading up to the arrest was as follows:

"When I first saw De Boer cutting the trees, it was on the 9th of January. I went to him and asked him how he happened to be cutting those trees, and he said, 'I want them for wood.' 'Well,' I said, 'you are trespassing. Those trees are on my land. They are this side of the center of the road.' He said, 'The trees belong to anybody that is a mind to cut them.' I asked him his name, and he said, 'It was for me to find out.' I asked him 'if he had any authority to cut those trees,' and he said 'that was his business.' I forbid his cutting any more. * * * Then I came to town and went to the prosecuting attorney's office and said to McDonald, 'McDonald, I have a grievance,' and he asked me what it was, and I defined the situation. I asked him for a warrant. I told him we had a lot of trees cut there. I told him we had a line of trees cut there numbering about 150 that occupied a space in the center of the highway, and I asked for a warrant. That was about all I said to McDonald. That covers the

whole ground, and he called up Mr. Lindsey. I told him I found this man cutting trees. I told him the man was John Doe. He would not tell me his name, and I told McDonald he said, 'That was for me to find out.' I told him I found this man cutting the trees, and I asked him his name and he said, 'Find out,' and then I told McDonald that I asked him if he had any authority from anybody to cut these trees, and he said 'that was his business.' I told him where those trees were, the size of some of them. Then Mr. McDonald called Mr. Lindsey and introduced me to him. He said, 'Mr. Lindsey, give Mr. Adams a warrant.'"

Upon direction of the prosecuting attorney, the proceedings before the magistrate were dismissed without the taking of any testimony. After the proofs had been put in in the circuit court in the present case, the trial judge directed a verdict in favor of the defendant on the ground that the undisputed facts showed that the defendant had probable cause for instituting the criminal prosecution, and that he was protected by the action of the prosecuting attorney in taking charge of the case.

We think the trial judge erred in directing a verdict. In our opinion the question whether he had made a full and fair disclosure of everything within his knowledge which would tend to cause or to exclude belief in plaintiff's guilt was a question of fact for the jury and not for the court. *Lansky* v. *Prettyman*, 140 Mich. 40 (103 N. W. 538).

We are also of the opinion that the question whether defendant had probable cause for making the complaint was a question of fact for the jury. While the conduct of the plaintiff was not commendable, we do not think it alone justified the defendant, as a matter of law, in causing his arrest without further inquiry. The plaintiff's statement of what occurred differs in some respects from the defendant's statement, and if the jury believed his statement and found that those grubs in the middle of the road had twice before been cut down by the public authorities, and that defendant must have known of such cut-

ting, and that Gouzewaard informed him that the overseer of highways had endeavored to induce his father to cut out these same grubs, and that, for the most part, the grubs were third growth from the original stumps and constituted a nuisance in the highway, these facts, with the other circumstances disclosed by the record, would require the submission of the question of probable cause to the jury.

We are further of the opinion that the law requiring notice to be given to the adjoining owner before trees are cut, in order to give him an opportunity to remove them, only applies to trees growing upon the margin of the highway. See 2 Comp. Laws, § 4163. And we are of the opinion that it was not contemplated that a strip of brush, grubs, and trees should be left standing and growing in the middle of a country highway, and that such growth is *prima facie* evidence of obstruction of the highway. While the grubs after being cut, so far as they were of any value, belonged to the defendant, the highway officers were under no obligation to give him notice to remove them before cutting them down.

It cannot be found, as a matter of law, that plaintiff admitted that he had no authority to cut the grubs, but the inference is at least permissible that he neither affirmed nor negatived his authority, but left it for the defendant to ascertain from further investigation.

The judgment is reversed, and a new trial ordered.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.